May it please the Court. Good morning, Your Honors. I wanted to start off with Dr. Smith's report, which is in Volume 8 of 8 of the Underseal Excerpt of Record, that's on pages 74 to 87. Dr. Smith goes through in detail Mr. Laverty's psychiatric history, talks about how he has been hospitalized five times, talks about how many years ago he began suffering from paranoid delusions, that he's been diagnosed with schizophrenia. And she goes on and talks about the fact that he was not medicated at all at the time of the trial in this case. She talks about how she gave him what's called the FAST test, which is a test for malingering, a test which concluded that Mr. Laverty was not malingering or overstating or pretending when it came to his psychiatric issues. She did say elsewhere in her report other things raised an issue of malingering, didn't she? I think she said that there were some issues in terms of whether or not there had been malingering earlier on, and I think that she discounted that. I think what she basically said was he minimized his symptoms and what he was talking about when he talked to Dr. Datta. He minimized when he was talking to Dr. Chamberlain. She actually said because of the change, she said this assertion raises a legitimate question about current malingering or at the very least seeking to achieve secondary gain by feigning mental illness. Which is why she gave him the FAST test, which is why she gave him that type of analysis and she concluded that he was not. It's the federal regime that governs at the point at which the district court was making this inquiry because this isn't a proceeding under 4241. It is. It isn't because 4241 is about a determination that the defendant may presently be suffering from a mental disease, and you make a determination that the defendant is presently suffering, but you're trying to do a retroactive determination of what his mental state was at an earlier point in the proceedings. So, first of all, we did raise a doubt as to his mental competency during the phase of the proceedings that we were in. Right, and that was resolved and that's something that we can review, but this post-trial thing is not within the language of 4241 as I read it. I understand and we made arguments about that in the brief. We talked about the 1985 amendment. We talked about the fact that it was amended to talk about the entire proceeding. I know, but even though it goes, and it's odd, it goes all the way to the end of the completion of the sentencing, but every point at which it says what would be determined, it talks in terms of what is then the mental. There's nothing in 4241 about making retroactive determinations, so I'm not sure the statute provides the legal framework that governs a claim of this sort. So, there's a couple things, Your Honor, one of which is that we did cite cases in which the courts have talked about and the government has said, well, there was an amendment, but we think the amendment broadened the statute. But there's a number of cases and we cited them that talk about retroactive applications, so that's the one thing. I understand, Your Honor, may not agree with that. But secondly, I'm sorry. So, do we have, in your view, what's your best case that says that 4241 and its procedures apply to a retroactive determination of whether someone had a mental illness at the time of their trial and its post-trial? I don't have a specific best case. I would refer, Your Honor, to the cases that we cited in our reply brief and in our opening brief collectively. We don't have, but the second point I wanted to make, Your Honor, is that we are arguing that the district court at the time, so obviously there's the 4241 issue post-conviction. We're arguing that the district court, sua sponte, should have conducted a hearing and we're also arguing the record is sufficient to review. But the claim is they should have sua sponte. Sure. Now, are you saying sua sponte at the time of the trial? So, yes. Okay. So, we're saying sua sponte at the time of the trial. That's what we briefed. We've said that, and we've cited cases that talk about where there's conflicting evidence, even if there is a report. And we talked about Dr. Chamberlain's report and the fact that he doesn't even address Mr. Babcock's concerns in the report. That's at page 52 of our opening brief. We go into detail about why he doesn't talk about anything regarding to his understanding, Mr. Labrador's understanding of the plea offer. My understanding is that there was a motion for competency. The district court then ordered the expert evaluation. Then the report came in. The district court had a hearing with counsel. Counsel for Laverty said, you know, the district court said, do you have any objections, counsel, or do you want an evidentiary hearing? And counsel said, I'm going to review the report. I'll let you know if I have any objections and if I think we need a hearing, and then basically said no, essentially said no. And how is, what does the district court, why can't the district court consider the fact that Laverty's own counsel had no objection, stated no objections to the expert report, and didn't ask for the evidentiary hearing that the district court offered? Well, so we make two arguments about that. One of them is that regardless of what Mr. Babcock said, the in-camera hearing in which the report was submitted, and then there was COVID, and then there was a setting of trial, and the entire issue appears to have been dropped. But what we indicate, what we're arguing is that the district court had enough information before it at the time. So hold a suesponded hearing. And secondly, if that's not true, the record is sufficient to show that Mr. Babcock was not effective in pursuing the competency issue, which gets back to what I was saying earlier to Judge Forrest, which was that Dr. Chamberlain did not address any of the specific questions that had been raised by Mr. Babcock. Can he, does he understand the plea? Is he able to talk to counsel about the plea? He's had mental issues in the past, that type of thing. And in fact, at page 52, we go through in detail the fact that Dr. Chamberlain gets information from Mr. Laverty that absolutely supports, and this was in front of the district court, that absolutely supports the concern. He says, I didn't know, the only evidence that I'm aware of in this case against me is the DNA. He misstates the amount of time that he's facing. He says, I think I might be facing 20 years. And he doesn't show any information or understanding of the case at all or of the plea negotiations. But I just wanted to go back to the earlier question. I just wanted to finish up on that real quick, which is that it's not only retroactive. Our view is that all the information that we put in is not necessarily, you know, goes to the question of what happened. It's information that can be considered by this court in terms of what happened at the time. It's additional information relating to what happened at the time. And I think that's as distinct. I'm sorry. I didn't mean to cut you off, Your Honor. I think that's as distinct from asking for a hearing on retroactive competence. I'm not saying. What happened at the time also. You know, I don't. I don't. The thing I didn't agree with in your reply brief is when you say if 4241 doesn't apply, then the ship is forever sailed. I don't think that that's true. There would be legal standards, but they wouldn't be 4241. It would be something different. You would have to, you know, establish that he was, in fact, incompetent at the earlier time. And that, therefore, his due process rights were violated. You'd have to assert some other claim in another legal box. But it wouldn't be 4241 because the structure of what Congress has created in 4241 is contemporaneous determinations and not retroactive ones. Well, we did cite to a third surrogate case. And, of course, we could still review the determination that was made under 4241 contemporaneously under the record as it existed. But doing this retroactive one where you later get additional evidence and say, well, what was the true fact? That's a legitimate inquiry, but it doesn't take place under 4241 as I read the statute. Okay. And I don't want to continue to belabor that. Whether or not we agree on that, there are numerous claims here that I think are cognizable. And, you know, we did cite it to a third surrogate case, Renfro. It's an old case in which the third surrogate said, look, if it turns out that there was a mistake made and it's too late now to establish this retroactively, the convictions must still be vacated because the mistake was made back then. And there are cases that go to ineffective assistance of counsel. If Mr. Babcock had at the time, speaking to Your Honor's point, developed that record. Correct. But it would change the standard because 4241 is a low standard to get a hearing. And that's the point is if we're in this retroactive situation, I'm not sure that same low standard cuts it anymore. I think the standard may be higher. You may need to show prejudice in an ineffective assistance claim. You may need to show prejudice in a due process claim. You may need to show that he was in fact, which is not the 4241 standard, that he was in fact. And that, of course, maybe we'd have to send it back to the district court if the district court applied the wrong standard. But it would also seem to be that the district court's holding necessarily precludes the lawyer finding under a more onerous standard. Sure. And with regard to the 4241 that was raised, we think timely and was evaluated contemporaneously pre-sentencing. If Your Honor's view is that the standard is low to get a hearing, we have made that claim. We have made that argument relating to the later hearing. And so I also want to just talk about and get to this whole issue, which we in the criminal defense bar, criminal defense lawyers, are seeing over and over again. We've raised it in the briefs. I want to just talk about how important this is. And there's not really a court, a federal court, to our knowledge that has looked at this, which is this post-McCoy situation in terms of individuals who are clearly mentally ill, where there's clearly overwhelming evidence against them, where Lafler requires us to talk about, you know, what is the plea offer? What are the risks of going to trial? And the individuals that we're talking to, like in this case, are too mentally ill to understand the risks of going to trial. They're too mentally ill to have, as the federal standard is, to have a rational conversation. Even post-Cadenas to have a rational conversation with us. So on the one hand, we're required as defense attorneys to have a reasoned discussion about the plea as we explain it to these individuals. And on the other hand, if they're too mentally ill and they don't understand it, they can come back and say to us, we're insisting on going to trial. We're insisting. And McCoy protects them. And my problem with that argument, you're saying McCoy essentially impliedly abrogated the application of the competency standard here, but in McCoy, the Supreme Court noted that the defendant had been found competent under the existing standard and then said essentially that the defendant has a constitutional right to say, I don't want to plead guilty. I don't want to do this, even in the face of overwhelming guilt. Even if their counsel thinks they are being irrational and contrary to their own self-interest, the defendant essentially, that is the defendant's decision. So how can we say that McCoy, implied by the defendant making that kind of decision that counsel thinks is irrational, means that the defendant is incompetent? I don't see how to reconcile the actual reasoning and holding of McCoy with what you're arguing. So what we're saying is, and we think that's in Edwards, that's what we're talking about. What we're saying is, sure, there's no question that McCoy says that if we have a competent person, he can insist regardless of what the defense attorney says, that's a right. The question is, how do you evaluate their competence? And what we're saying is that what we're arguing, we haven't seen this evaluated, is just like in Edwards, where we're talking about it phoretically, where the client is saying, I want to represent himself. The standard of competence is a higher standard. That was not addressed. Right, but in McCoy itself, there was a finding based on the existing standard, and nothing in McCoy questioned the application of that standard. That's because that particular issue, in our view, was not before the Supreme Court in McCoy. But I mean, I understand your honest point, and it's a great point. I'm just saying, I don't think that particular issue was there. And all I'm saying is that we're all dealing with this issue on a regular basis, so that particular issue we think is an important issue, and I wanted to kind of directly say, I'm asking the Ninth Circuit if possible to maybe take a look at that. Let me reserve the rest of my 52 seconds I have here for rebuttal. All right, great. So we'll hear now from counsel for the government. Ms. Shea, did I pronounce that correctly? Yes, Your Honor, thank you, Judge Collins. May it please the Court, Annie Shea for the United States. This Court should affirm the convictions and sentence in this case for three reasons. First, Laverty was thoroughly evaluated and deemed competent multiple times, including by two neutral court-appointed experts, whose findings and conclusions were consistent with the observations of the trial court, of counsel, and other collateral evidence. Any reasonable judge presented with this record would not have experienced a genuine doubt as to Laverty's competence. What about my question about the status of the case law on using 4241 retroactively? Counsel said and claimed in his reply brief that there are lots of cases that have used 4241 retroactively. Do you agree with that? Have we held that it can be done? No, Your Honor. I don't think any court has held expressly that Section 4241 authorizes retrospective competency hearings. It's an argument that we raise below and we preserve for appeal. The district court did go ahead with ordering a retrospective competency evaluation in this case. I will say, just to answer your question to my friend, Mr. Cohen, when it comes to retrospective competency hearings, as recognized, I think, by both parties, that this has been recognized in the due process context. There's a lot of cases, most of them dating back to the 70s and earlier, that recognize that all the retrospective competency hearings are possible. They are very disfavored, and they're usually limited to as much evidence as you can get as to what happened during the time of trial. So contemporaneous evidence from that period and other evidence as what was happening with the defendant and his mental state at the time of trial. And what is the standard for evaluating the claim under those cases? Your Honor, under the due process, in the due process context, the standard is, for the substantive competence standard, it's still dusky. For reviewing it, you're still looking at whether or not a judge would experience a genuine doubt. There's still a, from the government's view of the case law. Even though it's not under the 4241 rubric, it's the 4241 standard imported into the due process clause? It's a little difficult, Your Honor, because I think 4241 obviously was enacted in 1984 after a lot of these cases had already established, essentially, what was the standard of review for a retrospective due process claim. And it seems what 4241 did was largely use the reasonable cause language, but a lot of the cases that have interpreted 4241 interchangeably rely on both sort of cases. You're saying the due process standard actually came first, and then the standard came later? Yes, Your Honor. And, Your Honor, I just want to move first to the competency issues. I know that Judge Sung had raised a question earlier about, basically, at the hearing after that first evaluation, Mr. Babcock basically said no when the court asked whether or not he wanted an evidentiary hearing. I also wanted to point out in the record, and this is in ER 1053, that even at the end of that hearing, the court emphasized that Mr. Babcock should reach out if there was any other issues that came up. And I will also say that, you know, you look at this at the very end, he also engages Mr. Laverty. This is, again, one example of many in the record that show Mr. Laverty's own in-court behavior and how he understood what was going on and was appropriately engaging the court. Now, with regard to the competency issue, I think it's appropriate to look at it, both the pre-trial and the post-trial proceedings, even though there were both. And I think with regard to the pre-trial proceedings, the claims from Mr. Laverty are twofold. One is whether or not Mr. Babcock, under these circumstances, should have requested or was ineffective in not requesting a further hearing. And I think we look first at what was before Mr. Babcock in the court here. And we had, essentially, one expert report because Dr. Data's report— To just defer that issue entirely to a 2255, or do we have to decide that on the present record? You absolutely do, Your Honor. I think that, and the government pointed this out in its brief, but ineffective assistance claims are typically seen in collateral proceedings. And the reason for that is, in a collateral proceeding, you have much more ability to develop the record on an issue that is usually not apparent from the trial record. I mean, in this case, I think in theory we'd need to know, to some extent, what counsel's reasons were for not requesting the hearing or not proceeding. Yes, Your Honor. I think that the record here—I will say I think the record is sufficient as far as prejudice goes. So the court can dispel a Strickland claim based off of either prejudice or deficiency. Here there is ample evidence as far as the evidence in this case and what potential effect these sort of supposed errors would have had. I think as far as efficiency goes, Your Honor, the insanity defense claim is, I think, the least fleshed out. There was an affidavit from Mr. Babcock that was submitted in support of Laverty's Rule 45 hearing, and that had—it was tailored primarily towards the Rule 45, and so it was kind of bare bones. But he did discuss a little bit about what he and Laverty— and not presenting an insanity defense. What we do not have, though, is we don't have a fully unredacted version of Mr. Babcock's notes, some of which were presented in a highly redacted version in this appeal. We don't have anything from—I think it was Ms. Mitchell was the federal defender that represented Mr. Laverty for a year. She actually hired Dr. Data to investigate, it seemed, very thoroughly an insanity defense. And Dr. Data produced a very thorough report, which was given to Mr. Babcock. What we see is continuance after continuance over a year, and then what we see is Ms. Mitchell is substituted by Mr. Babcock. And then there's six more months of continuances in which presumably there's discussions going on, and then there's a superseding indictment in May of 2019, I believe, and that is when the case is set for trial. And so it seems that there was indeed enough record here to show that Mr. Laverty was very much against going to trial this entire time, to the extent that he, one, substituted his counsel after a year of such a defense being investigated, and, two, objected to any mental health issues being raised, including the competency issue. Can we talk about the Rule 45 issue for a second? Yes, Your Honor. I mean, that issue is governed by the factors under Pioneer Investment Services, is my understanding. What I'm struggling with is to be able to tell from the district court's decision that it actually applied those factors. So what in that decision tells me that the district court applied the right law? Well, Your Honor, I think we need to look at the record as a whole here, because the Rule 45 motion was filed, I believe it was in June of 2021, and this was after an April 2021 notice by Mr. Laverty, in which he raised his notice to, you know, seek his intent to follow Rule 45. He cites the pioneer factors, and then there's a hearing the very next day in which there's an objection by the government, there's a very brief discussion about the pioneer factors, and then it kicks off what is essentially another year and a half of proceedings. There's multiple hearings and lots of litigation that goes on, including very substantive briefing by both parties on the pioneer factors. Those sort of facts are discussed throughout at the various hearings. There's multiple orders also issued by the court, and it is clear that by the time the court issues, I believe it's May 2022 final order, it provides a very lengthy, thorough order on all the issues that were raised at that time, which were pertaining to competency, the IEC claims, and the Rule 45 claims. And at the very end of that order, the court denies Rule 45. It cites the pioneer factors and the pioneer test, and then it briefly says, for all the reasons I've already stated above, this is why I am denying the Rule 45. I don't find that the pioneer factors were met here. So I think that there's two ways you could read the district court's decision there. I think that's one of the ways, for sure. Another way to read it is sort of skipping over those factors about timeliness and just basically making a decision on the merits of whatever the motion for a new trial would be and saying you're not going to win on that motion anyways. And procedurally, that seems problematic to me because what the question was is can I file my motion? Can I get out of the time problem and file my motion? And in making that procedural request, I don't think the defendant actually put forward all of the substantive arguments for the new trial motion. So is it proper for the district court to sort of skip over the procedural question and get right to the merits without substantive briefing? Well, Your Honor, I think that's a fair point. I will say, first of all, when it comes to the denial of the Rule 45, I don't think the court denied it based purely off of the substantive analysis of the merits. If I was to disagree with you, do you think that that would be correct for the district court to do that? Can the district court do that? I don't. I think the court must engage in the equitable analysis. I think that under this court's case law, and again, we have Dovey, Newport, Mesa, United School District, which says the district court may consider the pioneer factors without discussing how much weight it gives to each. We also have the Bateman decision in which this court has said that it does not ordinarily reverse a court simply for failing to articulate the pioneer embryonis test as long as it actually engaged in the equitable analysis that those cases mandate. So I think what this court should look for is whether or not the district court actually engaged in that equitable analysis, and it did here based off of this record. So what in, I mean, can you point me to a page in the record that addresses, let's say, the first two factors under pioneer? I think you're right that maybe reason for delay is there. I don't think that the district court talked about it in that framing, but I think maybe that discussion is there. But some of these other ones, I can't find them. Your Honor, well, you pointed out the reason for delay, and the length of delay I think is part of that. Your Honor, I think throughout the hearings over the course of that year, the government and the court did point and note how much of a delay that these proceedings were creating and so forth. And there was also recognition about the fact that this was a victim case in which victim rights were implicated, and so there was prejudice in that regard. I think that with regard to the good faith element, I do, in that final order, the court does point out, and I think Dr. Lowe's report does too, is these jail calls that show Laverty's behavior outside of court, and essentially the evidence that Laverty had some knowledge of strategic reasoning for raising these claims post-trial. If there are no further questions on, I guess, the competency issue or perhaps the IAC issue or Rule 45, I'll just turn briefly to the denial of the continuance of sentencing. In Mr. Laverty's reply, you know, he tries again to characterize this as a complete denial of counsel. And again, I think this court's precedent, Thompson, Garrett, make clear that this is an issue in which it's a motion on whether to deny a continuance that arguably implicates the right to counsel. And again, at sentencing, Mr. Laverty was represented by one of his retained counsel, Mr. Gilmartin, who was representing him throughout with Mr. Cohen. And the factors that the court considered at that time rendered its decision not an abuse of discretion. If there are no further questions, the government asks respectfully that this court affirm. All right. Thank you, counsel. All right, we'll hear rebuttal. And I agree with the point that Judge Collins was just making that if we had had the opportunity to conduct a full-fledged motion for a new trial, that some of these issues that were being discussed in the context of, well, should we kick the can down the road and should it be a 2255, those are issues that could be raised at the motion for a new trial. And so we were trying to and we would like to raise those issues, and we can raise those issues in front of the district court, whether in the context of 4241 or due process. But there is a substantial injustice here, and that is that this is an individual who had no ability. He didn't talk about it with Chamberlain. He didn't talk about it with Babcock to understand the 10- to 15-year C plea. There was overwhelming evidence, and he's serving a sentence of 40 years, which is the rest of his life. If this is an individual who's mentally ill and his history of mental illness is overwhelming, his counsel have all agreed that he's mentally ill, this is a substantial injustice, Your Honors, and we're asking that Your Honors consider it carefully and remedy it under the theories that we've presented or any theories that Your Honors believe are appropriate. So if there are no other questions, I had one point about the insanity defense. We did make it in the reply brief, so it was kind of a repeat point, but it's not so much that Mr. Laverty could make a decision. He can under the case law talk about it. I don't want you to proceed with an insanity defense. But the issue is whether Mr. Babcock developed the insanity defense and looked into these issues sufficient to present it to Mr. Laverty and explain to him this is something that might actually work, whereas something else would not. So the idea that he was insistent on going to trial, that's part of his delusions. He wasn't presented with this idea, and that's where the IAC is, and we pointed that out in our reply. Anyway, thank you, Your Honors, for all your attention. Thank you, counsel. Thank both counsel for your arguments in this case, and the case of U.S. v. Laverty is submitted for decision.
judges: COLLINS, FORREST, SUNG